1

2

3

4

5

6

7

8 UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
9 AT SEATTLE

10 ANGEL ROBERSON, | CASE NO. C24-2138 MJP

11         Plaintiff, | ORDER ON MOTION TO DISMISS
AND MOTION TO STAY
12    v.

13 SEIU HEALTHCARE 1199NW, JANE
HOPKINS, and CASEY RUKEYSER,
14
        Defendants.
15

16

17      This matter comes before the Court on Defendants' Motion to Dismiss (Dkt. No. 23) and

18 Motion to Stay (Dkt. No. 25). Having reviewed the Motions, the Oppositions (Dkt. Nos. 30, 36),

19 the Replies (Dkt. Nos. 34, 40), and all supporting materials, the Court GRANTS both Motions.

20 **BACKGROUND**

21      Plaintiff Angel Roberson brings a variety of state and federal discrimination claims

22 against her former employer, SEIU Healthcare 1199NW and two individuals employed by SEIU,

23 Jane Hopkins and Casey Rukeyser. (Second Amended Complaint (Dkt. No. 20).) Roberson

24 identifies two events that she believes reflects discrimination. First, she alleges that when she

1    was hired, SEIU did not give her an experienced-based service credit. She suggests, indirectly,

2    that she was denied the credit on account of her race and gender. Second, she alleges that after

3    she filed a grievance and this lawsuit regarding the denial of the experience-based service credit,

4    she suffered retaliation and was ultimately terminated from her position. She intimates that the

5    termination was on account of filing suit and because of her race and gender. The Court reviews

6    the factual allegations and then the legal claims.

7        Roberson is a former nurse and member of SEIU, who served in various roles, including

8    as a member of the bargaining team, a delegate, and a member of the executive board. (SAC ¶¶

9    3.1-3.10.) After retiring from nursing, Roberson joined SEIU as a part time union organizer on

10   February 21, 2021. (Id. ¶ 3.10.) Though the SAC does not state when, it implies that Roberson

11   reported to Yolanda King-Lowe and "had regular check-ins with then Vice President (now

12   President) [Defendant] Jane Hopkins." (Id. ¶ 3.12.) Both King-Lowe and Hopkins are Black, as

13   is Roberson. (See id. ¶¶ 3.9, 5.2.) At some point in September 2021, Roberson was hired into a

14   full-time position. (Id. ¶ 3.13.)

15       Roberson's employment with SEIU is subject to a collective bargaining agreement

16   (CBA) between SEIU and the 1199 NW Staff Union ("Staff Union"). (SAC ¶ 3.14.) According

17   to the SAC, the CBA provides new employees with the ability to obtain an experience-based

18   service credit that can affect the employee's "step" on the pay scale, and, accordingly, their pay.

19   (Id. ¶¶ 3.15, 3.17.) Roberson alleges she was classified as Step III, though she does not say

20   whether this was at the time of her part-time or full-time hire, and that "the classification was

21   incorrect as it failed to consider her experience as a leader and delegate before she was hired by

22   SEIU." (Id. ¶¶ 3.18-.19.) At some unspecified time, Roberson attempted to resolve her

23   disagreement with her supervisor, King-Lowe, who then told her to discuss the matter with

24

1   Defendant Executive Vice President Casey Rukeyser. (Id. ¶ 3.20.) Rukeyser denied the request.

2   (Id. ¶ 3.20.) Other than identifying Rukeyser as white, Roberson does not allege that Rukeyser

3   said anything or did anything in any way related to her race or gender.

4          After being denied the service credit, at some unspecified time, Roberson learned that

5   seven other SEIU employees were denied the experience-based credit. (SAC ¶ 3.24.) She claims

6   that five of the seven were Black. (Id.) In addition, a white coworker who had successfully

7   appealed the denial of the experience-based credit encouraged Roberson to file a grievance. (Id. ¶

8   3.23.) She also claims that at a Staff Union meeting, which perhaps occurred after June 5, 2023,

9   six other employees (four of whom are Black) claimed to be denied the experience-based credit.

10  (Id. ¶ 3.28.)

11         At some unspecified time, Roberson filed a grievance under the CBA to complain about

12  the lack of the experience credit and pay. (Id. ¶ 25.) After doing so, Roberson claims she

13  "experienced significant retaliation." (Id. ¶ 3.29.) This retaliation is alleged, in full as follows:

14  "[h]er work was micromanaged and she was regularly intimidated by supervisors who did not

15  support her position that she had been misclassified." (Id.) Roberson does not offer any other

16  details of the alleged retaliation.

17         SEIU denied her grievance at the second of three steps on June 5, 2023, finding a lack of

18  factual support for the claim. (SAC ¶ 3.26.) The third step in the grievance process is arbitration,

19  but Roberson did not pursue it after the Staff Union refused to pay for the arbitration. (Id. ¶

20  3.27.) Roberson then filed suit in King County Superior Court on December 4, 2024, and

21  Defendants removed it on December 24, 2024. (Id. ¶ 3.32.)

22         After Roberson filed this lawsuit, she claims that Hopkins "began giving [her] the silent

23  treatment." (SAC ¶ 3.33.) On January 22, 2025, Hopkins and Roberson had a rather fractious

24

1  interaction at a "lobby day" in Olympia, Washington. According to Roberson, she was trying to

2  help another union member with her car, when a staff member called her back to ask, on behalf

3  of Hopkins, where Roberson was going. (Id. ¶¶ 3.34-.35.) Roberson then said to Hopkins: "If

4  you want to know where I am going, you can ask me." (Id. ¶ 3.35.) Roberson left to help the

5  union member with her car, and when she returned, Hopkins yelled at her for being

6  insubordinate and disrespectful. (Id. ¶ 3.36.) Roberson was then sent home early that day, but

7  told that she was not being disciplined. (Id. ¶ 3.37.) Two days later, Roberson filed a grievance

8  on January 24, 2025, claiming that Hopkins' behavior was inappropriate. (Id. ¶ 3.38.) That same

9  day, at 1:30 PM, Rukeyser terminated Roberson, stating that it was on account of the January 22,

10  2025 incident. (Id. ¶¶ 3.38-3.40.) No facts are alleged as to what else Rukeyser said. But, as

11  alleged, on that same day he sent Roberson an "offer that would have settled this Action," which

12  Roberson rejected. (Id. ¶ 3.39.) The offer included a non-disclosure clause that "prohibited

13  disclosure of a broad array of information about SEIU" that Roberson claims would have

14  "effectively . . . prohibit[ed] Ms. Roberson from disclosing the discrimination alleged in this

15  lawsuit in violation of RCW 49.44.211." (Id.)

16      Roberson brings nine claims: (1) race and gender discrimination under the Washington

17  Law Against Discrimination (SAC ¶¶ 5.1-5.4): (2) retaliation under the WLAD (Id. ¶¶ 6.1-6.5);

18  (3) wage theft in violation of RCW 49.52.050 (Id. ¶¶ 7.1-7.3); (4) termination in violation of

19  public policy (Id. ¶¶ 8.1-8.6); (5) a violation of the "Silenced No More Act," RCW 49.44.211

20  (Id. ¶¶ 9.1-9.5); (6) sex discrimination in violation of the Equal Pay Act, 29 U.S.C. § 209(d) (Id.

21  ¶¶ 10.1-10.6); (7) sex discrimination in violation of the Equal Pay and Opportunities Act, RCW

22  49.58.020 (Id. ¶¶ 11.1-11.6); (8) race and sex discrimination in violation of 42 U.S.C. § 2000e-2

23  (Id. ¶¶ 12.1-12.6); and (9) retaliation in violation of 42 U.S.C. § 2000e-3 (Id. ¶¶ 13.1-13.4.) With

24

1  her opposition, however, Roberson has withdrawn her final two claims without prejudice

2  because she admits they are not exhausted. (Pl. Opp. at 1 (Dkt. No. 36).)

3      Defendants have moved to dismiss and they have separately moved to stay discovery

4  pending resolution of the motion to dismiss.

5                                      **ANALYSIS**

6  **I.    Motion to Dismiss**

7      Having construed the SAC's allegations in Roberson's favor, the Court finds that all of

8  her claims suffer from defects that require dismissal. Below, the Court reviews each claim after

9  discussing the applicable legal standards.

10 **A.    No Conversion to Summary Judgment**

11     Roberson asks the Court to convert Defendants' Motion to Dismiss into a motion for

12 summary judgment pursuant to Rule 12(d) and postpone any ruling on the motion for summary

13 judgment pending more discovery, per Rule 56(d). The Court declines this request. While

14 Defendants have submitted materials with their Motion that are not contained in the SAC, the

15 only document the Court finds necessary to consider in ruling on the Motion to Dismiss is the

16 proposed settlement agreement. The Court considers this document, which has been incorporated

17 by reference into the SAC. See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th

18 Cir. 2018); (SAC ¶¶ 3.39, 9.1-9.5). Since the Court has considered no other documents presented

19 by Defendants, it finds no basis to convert the Motion to a summary judgment motion.

20 **B.    Legal Standard**

21     Defendants move for dismissal under Fed. R. Civ. P. 12(c). The standard governing a

22 Rule 12(c) motion for judgment on the pleadings is "functionally identical" to that governing a

23 Rule 12(b)(6) motion. United States ex rel. Caffaso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d

24

1   1047, 1054 n.4 (9th Cir. 2011). Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a

2   complaint for "failure to state a claim upon which relief can be granted." In ruling on a motion to

3   dismiss, the Court must construe the complaint in the light most favorable to the non-moving

4   party and accept all well-pleaded allegations of material fact as true. Livid Holdings Ltd. v.

5   Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005); Wyler Summit P'ship v. Turner

6   Broad. Sys., 135 F.3d 658, 661 (9th Cir. 1998). Dismissal is appropriate only where a complaint

7   fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp.

8   v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff

9   pleads factual content that allows the court to draw the reasonable inference that the defendant is

10  liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

11  **C.      Roberson's WLAD Discrimination Claim Is Inadequately Pleaded**

12          The Court finds that Roberson has failed to plead her WLAD discrimination claim with

13  sufficient factual allegations to survive dismissal.

14          The WLAD prohibits discrimination in employment on the basis of sex, age, disability,

15  and other protected characteristics. RCW 49.60.030. To accomplish the act's purpose of

16  eliminating and preventing discrimination, the legislature has directed Washington courts to

17  liberally construe the WLAD's provisions. RCW 49.60.010; RCW 49.60.020. "'[A] plaintiff

18  bringing a discrimination case in Washington assumes the role of a private attorney general,

19  vindicating a policy of the highest priority.'" Jin Zhu v. N. Cent. Educ. Serv. Dist.-ESD 171, 189

20  Wn.2d 607, 614 (2017) (quoting Marquis v. City of Spokane, 130 Wn.2d 97, 109 (1996)).

21          Roberson asserts a disparate treatment claim and a hostile work environment claim. (Pl.

22  Opp. at 19.) "An employer who discharges, reassigns, or harasses for a discriminatory reason

23  faces a disparate treatment claim[.]" Pulcino v. Fed. Express Corp., 141 Wn.2d 629, 640 (2000).

24

1    Disparate treatment claims require showing that the employer treated the employee differently

2    from similarly-situated employees. See Haubry v. Snow, 106 Wn. App. 666, 676 (2001). To

3    prove a hostile work environment case, the plaintiff must show: (1) that she is a member of a

4    protected class, (2) that the harassment was unwelcome, (3) that it was because of the protected

5    status, (4) that it affected the terms or conditions of employment, and (5) that it was imputable to

6    the employer. Robel v. Roundup Corp., 148 Wn.2d 35, 45 (2002). "To satisfy the second

7    element, proof that the conduct was unwelcome, the plaintiff must show that he or she did not

8    solicit or incite it and viewed it as undesirable or offensive." Id. (citation and quotation omitted).

9        Roberson's disparate treatment discrimination claim fails because she has not alleged any

10    direct or circumstantial causal link between her race or gender and an adverse employment

11    action. There are no allegations of direct discrimination, and, indeed, no allegations that Hopkins

12    undertook any action that might support a claim against her. As to Rukeyser, Roberson has not

13    alleged he acted with any animus towards her or took any adverse actions because she is Black

14    or a woman. All that is alleged is that Rukeyser is white and denied Roberson the experience-

15    based credit and terminated her based on allegations made by Hopkins. And as to circumstantial

16    evidence of discrimination, Roberson fails to provide sufficient detail to allow for a plausible

17    conclusion that the experience-based credit is generally denied to Black employees or that she

18    was terminated because of her gender or race. All Roberson cites to is that one other white

19    coworker successfully won her appeal of a denial of the experience-based service credit, while a

20    majority of other employees who were denied the same credit are Black. (SAC ¶¶ 3.23, 3.24,

21    3.28.) But Roberson has not alleged how she was similarly situated to the white employee,

22    including any allegations that she had similar experience that would have qualified her for the

23    individualized experience credit. The same is true as to the other Black employees—there are no

24

1  allegations about who these individuals are, whether they should have qualified for the credit, or

2  whether they appealed the denial of the credit. These allegations are therefore inadequate to

3  provide circumstantial evidence of discrimination causation that is necessary to support the

4  claim. See Haubry, 106 Wn. App. at 676. And Roberson has not identified any circumstantial

5  evidence sufficient to show a causal link between her race and gender with the termination.

6        Roberson's hostile work environment claim also fails because it lacks sufficient

7  allegations of direct or circumstantial evidence of discrimination on account of gender or race.

8  Roberson first claims she was retaliated against by an unidentified supervisor who intimidated

9  her after she filed her pay-related grievance. (SAC ¶ 3.29.) But this vague allegation does not

10  identify what the intimidation was, who the individual was such that it might be imputed to the

11  employer, or even when the intimidation occurred. See Glasgow v. Georgia Pac. Corp., 103

12  Wn.2d 401, 407 (1985). Roberson also claims she was micromanaged after filing her grievance.

13  (SAC ¶ 3.29.) But this allegation is even less detailed than the allegation of intimidation, and it

14  fails to identify facts imputable to the employer that might rise to the level of discrimination.

15  Finally, Roberson claims that Hopkins began giving her the silent treatment after she filed the

16  lawsuit. But this is not an adequate allegation of a hostile work environment, as Roberson fails to

17  allege how the failure to speak made the conditions of her employment intolerable. This is

18  particularly the case because Roberson makes no allegations about how frequently she interacted

19  and worked with Hopkins.

20        Given the insubstantial allegations in the SAC concerning core elements of Roberson's

21  WLAD discrimination claim, the Court DISMISSES the claim without prejudice.

22

23

24

1  **D.    Roberson's WLAD Retaliation Claim Fails**

2        The Court also finds that Roberson fails to allege sufficient facts to sustain her WLAD

3  retaliation claim.

4        "The WLAD also prohibits employers from retaliating against persons who oppose

5  discriminatory practices prohibited by the act." <u>Bittner v. Symetra Nat'l Life Ins. Co.</u>, 32 Wn.

6  App. 2d 647, 657 (2024). A WLAD retaliation claim has three elements: "(1) the employee took

7  a statutorily protected action, (2) the employee suffered an adverse employment action, and (3) a

8  causal link between the employee's protected activity and the adverse employment action."

9  <u>Cornwell v. Microsoft Corp.</u>, 192 Wn.2d 403, 411 (2018). This can be proved in two ways: (1)

10  under the McDonnell Douglas burden-shifting framework "where an employee can only produce

11  circumstantial, indirect, and inferential evidence to establish discriminatory action"; or (2) under

12  the direct evidence method. <u>See</u> <u>Bittner</u>, 32 Wn. App. 2d at 658-59 (citation and quotation

13  omitted).

14        Roberson's SAC fails to allege that any of the adverse employment actions were taken on

15  account of her race or gender. Roberson seems to believe that by filing her pay-related grievance,

16  she suffered retaliation. But, as pleaded, the alleged retaliation is overly vague to support the

17  claim. Roberson includes just one sentence in which she alleges she was micromanaged and

18  "regularly intimidated by supervisors," none of whom are unnamed. (SAC ¶ 3.29.) Without any

19  detail, these allegations are not plausible allegations of retaliation, particularly since they do not

20  identify who was involved, the relevant time frame or any detail about the alleged intimidation or

21  micromanagement. Similarly, the claim that Hopkins retaliated lacks adequate allegations that

22  she acted on account of Roberson's race or gender. At most, Roberson suggests that Hopkins

23  gave her the silent treatment and then yelled at on January 22, 2025 for disrespecting her. But

24

there are no cogent allegations that this was in retaliation or on account of Roberson's race or gender. And Hopkins herself is not alleged to have had any authority over the termination or any involvement in the pay-related grievance. That decision was undertaken by Rukeyser, against whom there are no plausible claims of retaliatory animus or intent. As pleaded, this claim is too vague and speculative to satisfy the Iqbal/Twombly standard to state a claim. The Court therefore DISMISSES this claim without prejudice.

**E.      State Wage Theft Claim Lacks Sufficient Allegations**

Defendants argue that Roberson's Wage Rebate Act claim fails because she has not identified any wage that might meet the statutory definition. The Court agrees.

Roberson alleges that "Defendant" failed to pay her a "wage it was obligated to pay her by statute, ordinance, or contract in violation of RCW 49.52.050." (SAC ¶ 7.2.) But there are no allegations that SEIU was obligated to pay Roberson the experience-based service credit, which instead appears to be a discretionary award. This is fatal to the claim, as the Wage Rebate Act applies only those "wage[s] [an] employer is obligated to pay such employee by any statute, ordinance, or contract." RCW 49.52.050(2). Although Roberson believes she should have been given this discretionary credit, she identifies no legal or contractual obligation that SEIU pay her this wage. This undermines her claim. The Court DISMISSES the claim without prejudice, though it doubts it can be saved by amendment.

**F.      Termination in Violation of Public Policy Fails**

The Court finds that Roberson has failed to adequately allege that she was terminated in violation of public policy.

There are four elements to the intentional tort of termination in violation of public policy: (1) the existence of a clear public policy; (2) discouraging the conduct in which plaintiff engaged

1    would jeopardize the public policy; (3) the public-policy-linked conduct caused the dismissal;

2    and (4) the defendant must not be able to offer an overriding justification for the dismissal."

3    Worland v. Kitsap Cnty., 29 Wn. App. 2d 818, 827 (2024) (citation and quotation omitted).

4        Roberson has failed to allege sufficient information connecting her termination to any

5    engagement in protected activity—a failure of causation. She alleges that she engaged in

6    protected conduct by filing a grievance about her pay and then filing this lawsuit. But she has not

7    provided plausible allegations that Rukeyser fired her because of the pay-related grievance or the

8    lawsuit. Instead, Rukeyser allegedly terminated Roberson because of her insubordination to

9    Hopkins alone. And while Roberson claims she filed a grievance about Hopkins the same day of

10   her termination, she does not specify whether she did so before she was terminated at 1:30 PM or

11   later. And even if she did file the grievance before being terminated, she has not provided any

12   competent allegations that Rukeyser terminated her because of it. As Roberson concedes, the

13   allegations involving Hopkins and Rukeyser can be clarified. (Pl. Opp. at 23.) Such clarification

14   is necessary if this claim is to proceed. The Court DISMISSES this claim without prejudice.

15   **G.    Silenced No More Act Claim Fails**

16       Roberson has failed to state a claim that the proposed settlement violated Washington's

17   Silenced No More Act, RCW 49.44.211(1) ("SNMA").

18       The SNMA states that "[a] provision in an agreement by an employer and an employee

19   not to disclose or discuss conduct, or the existence of a settlement involving conduct, that the

20   employee reasonably believed under Washington state, federal, or common law to be illegal

21   discrimination, illegal harassment, illegal retaliation, a wage and hour violation, or sexual

22   assault, or that is recognized as against a clear mandate of public policy, is void and

23   unenforceable." RCW 49.44.211(1). An employer violates this provision by "request[ing] or

24

1   requir[ing] that an employee enter into any agreement provision that is prohibited by" the Act.

2   RCW 49.44.211(4).

3         Roberson has failed to allege that the proposed non-disclosure agreement in the

4   settlement offer Rukeyser proposed the day she was terminated would have prohibited her from

5   disclosing discrimination in violation of the SNMA. First, the SAC fails to plausibly allege that

6   the proposed settlement violated the SNMA. The SAC states only that the proposed agreement

7   "effectively purports to prohibit Ms. Roberson from disclosing the discrimination at alleged in

8   the lawsuit[.]" (SAC ¶ 3.39.) By stating the agreement only "effectively purports" to violate the

9   SNMA, the Complaint fails to make a cogent allegation that it <u>does</u> violate the Act. Second, the

10   proposed settlement agreement itself undermines the claimed violation. The relevant part of the

11   agreement reads: Roberson "will not disclose information that is not otherwise generally known

12   to the public relating to or pertaining to 1199NW's operations, projects, members, suppliers,

13   trade secrets, strategies, including but not limited to the following: financial information;

14   techniques, technology, practices, methods of conducting business, information technology

15   systems, published and unpublished know-how, research projects, products, legal affair, and

16   future plans." (Dkt. No. 23-3 at 61.) Although workplace discrimination might be read to reach

17   "119NW's operations," the settlement agreement includes an express carve-out for the reporting

18   workplace discrimination. It states; "nothing in this Agreement prohibits, prevents, or interferes

19   with Employee's right to communicate, and/or initiate communications, with the EEOC and

20   other federal, state or local agencies with jurisdiction over workplace or employment issues."

21   (<u>Id.</u>) Given this carve-out, the settlement agreement permitted Roberson to disclose any and all

22   information about the alleged discrimination at issue in this litigation. As such, the proposed

23

24

1    agreement did not run afoul of the SNMA. The Court DISMISSES the claim without prejudice,

2    though it doubts it can be saved by amendment.

3    **H.      Roberson's Equal Pay Act Claims Fail**

4          Roberson has not alleged actionable claims under Federal Equal Pay Act or Washington

5    Equal Pay and Opportunities Act.

6          To establish a claim under the Equal Pay Act, 29 U.S.C. § 206(d), the "plaintiff has the

7    burden of establishing a prima facie case of discrimination by showing that employees of the

8    opposite sex were paid different wages for equal work." Stanley v. Univ. of Southern Cal., 178

9    F.3d 1069, 1073–74 (9th Cir. 1999). As part of a prima facie equal pay claim, the plaintiff must

10   establish that his or her job is "substantially equal" to the jobs performed by members of the

11   opposite sex. Id. at 1074. The court compares the jobs in question, not the relative skill of the

12   individuals who hold the jobs. Id. And "it is actual job performance requirements, rather than job

13   classifications or titles, that is determinative." EEOC v. Maricopa County Cmty. Coll. Dist., 736

14   F.2d 510, 513 (9th Cir. 1984); see also 29 C.F.R. § 1620.13(e).

15         Washington's Equal Pay and Opportunities Act forbids "discriminat[ion] in any way in

16   providing compensation based on a person's gender or membership in a protected class between

17   similarly employed employees of the employee." RCW 49.58.020(1). The Act provides that

18   "employees are similarly employed if the individuals work for the same employer, the

19   performance of the job requires similar skill, effort, and responsibility, and the jobs are

20   performed under similar working conditions," though titles alone are not determinative. RCW

21   49.58.020(2).

22         Although Roberson alleges that she earned "substantially lower" wages than her

23   "similarly situated male employees," she does not identify who the male counterparts are, what

24

ORDER ON MOTION TO DISMISS AND MOTION TO STAY - 13

their job duties were, or whether there was any wage discrepancy. And as Defendants point out, the SAC itself references "Dr. Frank" instead of Roberson—a typo which further undermines the adequacy of the pleading, but which the Court construes as an intended reference to Roberson. (SAC ¶¶ 10.6, 11.6.) Regardless, without any allegations about comparability, neither claim may proceed and the Court DISMISSES the claims without prejudice.

Because Roberson has failed to state any viable claims, the Court GRANTS the Motion to Dismiss and DISMISSES the SAC without prejudice. Roberson must file an amended complaint within 20 days of the date of this Order.

**II.    Motion to Stay**

Defendants have asked for a stay of discovery pending the resolution of the Motion to Dismiss. (Mot. at 1-4.) The Court finds merit in this request even beyond the issuance of this Order. As the Ninth has held "[a] district court may . . . stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief." Wood v. McEwen, 644 F.2d 797, 801(9th Cir. 1981) (per curiam). At present, the Court has found that Roberson has failed to plead any valid claim for relief. Unless and until she does, the Court finds that discovery and all case deadlines must be stayed to conserve party and judicial resources. And Roberson has failed to identify any prejudice that will result, particularly given that she is still in the process of exhausting some of the claims initially pleaded. As to the duration of the stay, it need not be particularly long. Roberson has been granted leave to amend her claims, and once she does so, the Court expects Defendants will again seek dismissal. This may delay proceedings by two to three months, but such a delay is reasonable and necessary given the inadequacy of the allegations in the SAC. Once Roberson files an amended complaint that survives dismissal (or

1    which is not challenged by Defendants), will the Court reopen discovery and reset the case for

2    trial.

3        Defendants have asked for alternative relief, including a stay pending the arbitration of

4    Roberson's claims. The Court does not reach this argument, as it was requested only in the

5    alternative. Additionally, the Court DENIES Roberson's request for sanctions. While Roberson's

6    counsel has identified reasonable frustration in working with Defense counsel to set depositions

7    and engage in discovery. But the Court does not find sanctions warranted particularly given that

8    much of Defendants' resistance to set depositions occurred after they moved to dismiss and stay

9    this case. On the record before it, the Court does not find grounds for sanctions.

10   **III.    A Note on Tone**

11       In reviewing the Motion to Dismiss and Motion to Stay, the Court is struck by the lack of

12   professionalism by counsel for both Plaintiff and Defendants. Roberson's counsel has submitted

13   a complaint and briefing that are riddled with typos and a lack of proof-reading. The SAC, too,

14   lacks organization and the detail necessary to state a claim on which relief can be granted. This

15   presentation undermines the quality of the advocacy, and it can be corrected if counsel takes

16   greater care before filing materials with the Court. Defense counsel, too, has filed extensive

17   briefing that reflects an unprofessional level of combativeness that does not serve his clients'

18   interest. In particular, defense counsel appears more interested in denigrating Roberson's counsel

19   and filing clever prose than submitting briefing that identifies the relevant law and concisely

20   explains why the relief sought is proper. And emails submitted to the Court indicate a lack of

21   professionalism from Defense counsel, who should refrain from engaging in personal attacks.

22   Going forward, the Court admonishes counsel to work cooperatively and to rise above petty

23   disputes. In particular, Roberson's counsel must do better to proof-read his work. And Defense

24

1  counsel must refrain from distraction, focus the briefing, and work cooperatively without

2  personal attacks. Counsel owes this duty to their clients and the Court.

3                                    **CONCLUSION**

4          Defendants have identified defects in all seven of the claims that Roberson pursues in this

5  case. The SAC lacks sufficient, plausible allegations that are necessary to state a claim under any

6  of the legal theories presented. The Court therefore GRANTS the Motion to Dismiss and

7  DISMISSES the claims in the SAC without prejudice. The Court GRANTS leave to amend, and

8  any amended complaint must be filed within 20 days of the date of this Order.

9          The Court also GRANTS the Motion to Stay and stays discovery and all other deadlines

10  in this matter. The Court will revisit the stay only after Roberson files an amended complaint that

11  either survives a renewed motion to dismiss or is not challenged by Defendants.

12         The clerk is ordered to provide copies of this order to all counsel.

13         Dated August 25, 2025.

15         Marsha J. Pechman
           United States Senior District Judge