UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANGEL ROBERSON,

               Plaintiff(s),

    v.

SEIU HEALTHCARE 1199NW, et al.,

               Defendant(s).

CASE NO. C24-2138-KKE

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Plaintiff Angel Roberson filed this action against her former employer, Defendant SEIU Healthcare 1199NW ("SEIU"), and two SEIU employees, bringing state and federal claims arising from alleged discrimination and retaliation. Dkt. Nos. 1, 17, 20. The Court previously dismissed Plaintiff Angel Roberson's second amended complaint without prejudice and granted a motion to stay discovery and vacate all other case deadlines. Dkt. No. 42. Roberson filed a third amended complaint ("TAC") bringing state claims only (Dkt. No. 43), and Defendants renewed their motion to dismiss for failure to state a claim. Dkt. No. 45.

The Court finds that Roberson's hostile work environment claim is again inadequately pleaded and will therefore be dismissed without leave to amend, but that the other claims withstand Defendants' motion to dismiss. Accordingly, the Court will grant in part and deny in part Defendants' motion.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 1

# I.    BACKGROUND[1]

Roberson is a former nurse at Providence St. Peter Hospital and while employed there, she was a member of SEIU.  Dkt. No. 43 ¶ 3.1.  Roberson served in various roles with SEIU, including as a member of the bargaining team, a union delegate, and a member of the executive board.  *Id*. ¶¶ 3.2–3.8.  After retiring from nursing, Roberson was recruited to join SEIU as a part-time union organizer in February 2021.  *Id*. ¶ 3.10.  Roberson was promoted to a full-time position, effective July 5, 2021.  *Id*. ¶ 3.11.  Upon her promotion, Roberson directly reported to SEIU's treasurer Yolanda King-Lowe and "had regular check-ins with then Vice President (now President) [Defendant] Jane Hopkins."  *Id*.  Both King-Lowe and Hopkins are Black women, as is Roberson. *Id*. ¶¶ 3.9, 3.11.

Roberson's employment with SEIU is subject to a collective bargaining agreement ("CBA") between SEIU and the 1199 NW Staff Union ("Staff Union").  Dkt. No. 43 ¶ 3.12.  The CBA provides new employees with the ability to obtain an experience-based service credit that can affect the employee's "step" on the pay scale, and, accordingly, their pay.  *Id*. ¶ 3.14. Roberson heard in late 2022 from co-worker Laura Dougherty (a White woman) that Roberson had been placed on the wrong step early in her SEIU career.  *Id*. ¶¶ 3.17, 3.18.  Dougherty suggested that Roberson request an audit of her placement on the payscale, and that she should request (as Dougherty had successfully done) that SEIU adjust her pay to account for her prior experience.  *Id*. ¶ 3.18.  Roberson requested an audit, and followed up with an email to her supervisor in February 2023 to inquire as to the status of the audit.  *Id*. ¶ 3.19.

After Roberson sent the follow-up email, King-Lowe informed Roberson that her wage would not be adjusted because SEIU's Executive Vice President Casey Rukeyser said that

---

[1] The facts alleged in the operative complaint are assumed to be true for the purposes of resolving the motion to dismiss.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 2

Roberson was not a "Leader on Program." Dkt. No. 43 ¶ 3.20. Roberson alleges that she "more than satisfies" the definition of a "Leader on Program," which is one of the experiences relevant to the experienced-based service credit, although this term is not defined in the CBA. *See id*. ¶¶ 3.14, 3.15, 3.21. Roberson alleges that she was entitled to a wage adjustment due to her experience, and had even more experience than Dougherty, but was nonetheless denied this adjustment due to race and gender discrimination. *Id*. ¶ 3.23 & n.1. Roberson contends that the disparity between her pay and Dougherty's pay is due to the fact that Roberson is Black and Dougherty is White and/or due to "racial and gender animus and discrimination." *Id*. ¶¶ 3.24, 3.25.

Roberson filed a grievance in March 2023 alleging that she was improperly placed on the pay scale. Dkt. No. 43 ¶ 3.26. SEIU denied the grievance. *Id*. Roberson escalated the grievance to the second step, and King-Lowe denied the grievance for the second step. *Id*. ¶ 3.28. In order to escalate the grievance to step three, Robertson was required to ask the staff union to escalate the matter to arbitration. *Id*. ¶ 3.29. At a meeting in either July or August 2023, the staff union voted not to proceed with a step-three grievance. *Id*. ¶ 3.30. At that meeting, Roberson asked the staff union members whether any of them had also been denied experience credit. *Id*. ¶ 3.31. Seven women raised their hands (five of them women of color), and no men raised their hands. *Id*. ¶¶ 3.31, 3.32.

Sometime after August 30, 2023, and before November 2023, Roberson and other staff union members met with Hopkins and Rukeyser and others, to express concerns that members were placed on the wrong step on the payscale because of their race and gender. Dkt. No. 43 ¶ 3.35. These complaints led to the creation of lists of employees who should be considered Leaders on Program. *Id*. ¶ 3.36. But after Roberson filed her grievance and raised concerns about discrimination, Hopkins stopped speaking to her. *Id*. ¶ 3.38. Hopkins and King-Lowe gave

Roberson the silent treatment and shunned her at work and social events, but openly and readily spoke to Dougherty.  *Id*. ¶¶ 3.39, 3.41, 3.44.

After making a demand and attempting to communicate with SEIU through counsel, Roberson filed this lawsuit in King County Superior Court in December 2024.  Dkt. No. 43 ¶ 3.45, 3.47, 3.48.  SEIU removed the suit to this Court.  *Id*. ¶ 3.49.  On January 22, 2025, Roberson was attending Lobby Day with other SEIU colleagues, and asked Hopkins a question.  *Id*. ¶¶ 3.50, 3.51, 3.51.  Hopkins interrupted and yelled (in front of Roberson's colleagues) that Roberson was insubordinate and disrespectful.  *Id*. ¶ 3.52.  King-Lowe sent Roberson home early that day, but told her she was not being disciplined.  *Id*. ¶ 3.53.  Roberson alleges that Hopkins' treatment of her on Lobby Day was motivated by race and gender discrimination, and retaliation for her complaints and lawsuit.  *Id*. ¶ 3.54.  Roberson filed a grievance related to Hopkins's Lobby Day behavior on January 24, 2025.  *Id*. ¶ 3.55.

Before 1:30 p.m. on January 24, 2025, Rukeyser offered to settle this action directly with Roberson (not via her counsel).  Dkt. No. 43 ¶ 3.56.  The settlement offer contained a clause prohibiting disclosure of various categories of business information.  *Id*.  At 1:30 p.m. on January 24, 2025, SEIU terminated Roberson's employment during a meeting.  *Id*. ¶ 3.57.  Roberson and Dougherty asked why Roberson was being terminated, and were told that it was because of the Lobby Day incident.  *Id*.  Roberson alleges that her termination was in retaliation for her reports of discrimination.  *Id*. ¶ 3.58.  In April 2025, Roberson filed an inquiry with the Equal Employment Opportunity Commission ("EEOC").  *Id*. ¶ 3.60.

Roberson amended her complaint in April 2025 (Dkt. Nos. 14, 17, 20), and SEIU filed a motion to dismiss along with a motion to stay discovery pending resolution of the motion to dismiss.  Dkt. Nos. 23, 25.  The Court granted both motions and stayed the case in August 2025.  Dkt. No. 42.  Roberson filed the TAC in September 2025 (Dkt. No. 43), and SEIU renewed its

motion to dismiss thereafter. Dkt. No. 45. This matter was transferred to the undersigned judge in October 2025. Dkt. No. 47.

The briefing on SEIU's motion to dismiss is complete, the Court heard from the parties at oral argument, and the motion is now ripe for resolution.

## II.    ANALYSIS

### A.    Legal Standard on a Motion to Dismiss

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court examines the complaint to determine whether, if the facts alleged are true, the plaintiff has stated "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state a plausible claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). The judicially created "incorporation by reference" exception allows a court to "treat[] certain documents as though they are part of the complaint itself[,]" for purposes of resolving a motion to dismiss. *Id*. at 1002. This exception allows a court to look beyond the face of the complaint to determine the sufficiency of the allegations in light of a document attached to a motion to dismiss, if that document is referenced in the complaint and central to plaintiff's claim, and no party disputes its authenticity. *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011).

"If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts." *Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1093 (N.D. Cal. 2014). But where a plaintiff

has repeatedly "fail[ed] to cure deficiencies by amendments previously allowed[,]" leave to amend again may be denied. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**B.      The Motion to Dismiss Is Not Converted to a Summary Judgment Motion.**

Roberson notes that SEIU attached "extraneous material" to its motion to dismiss, and requests that this material be stricken or the motion be converted to a motion for summary judgment and continued to permit discovery. Dkt. No. 51 at 16. The Court previously rejected a similar request, and the Court again finds it unnecessary to either strike the evidence or convert the motion. *See* Dkt. No. 42 at 5. The Court has not considered SEIU's extraneous evidence, other than the proposed settlement agreement, which is referenced and quoted in the complaint. *See* Dkt. No. 43 ¶¶ 3.56, 8.4. Because the incorporation by reference doctrine permits the Court to consider the settlement agreement in resolving the motion to dismiss without converting the motion, and the Court has not considered any of the other evidence attached to the motion, the Court denies Roberson's motion to strike and/or convert the motion as moot.

**C.      Plaintiff's Hostile Work Environment Claim is Inadequately Pleaded, but the Disparate Treatment Claim Survives.**

The Washington Law Against Discrimination ("WLAD") prohibits discrimination in employment on the basis of sex, age, disability, and other protected characteristics. WASH. REV. CODE § 49.60.030. To accomplish the WLAD's purpose of eliminating and preventing discrimination, the Legislature has directed Washington courts to liberally construe the WLAD's provisions. WASH. REV. CODE §§ 49.60.010, 49.60.020. "'[A] plaintiff bringing a discrimination case in Washington assumes the role of a private attorney general, vindicating a policy of the highest priority.'" *Jin Zhu v. N. Cent. Educ. Serv. Dist.-ESD 171*, 404 P.3d 504, 508 (Wash. 2017) (quoting *Marquis v. City of Spokane*, 922 P.2d 43, 49 (Wash. 1996)).

Here, Roberson asserts a disparate treatment claim and a hostile work environment claim under the WLAD. Dkt. No. 43 ¶¶ 5.1–5.5. The Court will address each claim in turn.

1. *Disparate Treatment*

"An employer who discharges, reassigns, or harasses for a discriminatory reason faces a disparate treatment claim[.]" *Pulcino v. Fed. Express Corp.*, 9 P.3d 787, 793 (Wash. 2000). Disparate treatment claims require showing that the employer treated the employee differently from similarly situated employees. *See Haubry v. Snow*, 31 P.3d 1186, 1192 (Wash. Ct. App. 2001).

In the TAC, Roberson alleges in conclusory fashion that she and Dougherty were "similarly situated at the times when they made their requests" for a wage audit (Dkt. No. 43 ¶ 3.24), although other allegations in the TAC highlight differences between them. For example, the TAC emphasizes differences in their levels of experience at the time they were hired. *See id*. ¶ 3.23. The TAC also describes Dougherty as a "team lead," but does not ascribe this title to Roberson. *See id*. ¶ 3.17. The TAC also suggests that Dougherty was hired long before Roberson was and that her request for a wage audit was handled long in the past. *See id*. ¶ 3.18. The TAC compares Dougherty's salary in 2023 with Roberson's salary in 2023 (*id*. ¶ 3.23), and states that the "disparity between their pay cannot be explained by reference to experience or objective metrics [but] [t]his pay disparity is best — and only — described as disparate treatment motivated by racial and gender animus and discrimination." *Id*. ¶ 3.24. The following paragraph ascribes the disparity only to racial (not gender) discrimination. *Id*. ¶ 3.25.

These discrepancies or inconsistencies may signal the difficulty that Roberson may face in bringing a prima facie case of discrimination at a later point in this litigation, but the Court nonetheless finds that the TAC adequately pleads a claim for disparate treatment. She alleges that when she requested a wage audit, Defendants refused to adjust her wage step, but that when a

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 7

White co-worker requested a similar audit, Defendants promptly adjusted her wage step.  Dkt. No. 43 ¶¶ 3.24, 3.25.  She also alleges that in an informal hand-raising poll during a meeting, no men reported that they had been denied the experience credit Roberson unsuccessfully sought.  *Id*. ¶¶ 3.31, 3.32.  These allegations are sufficient to withstand a motion to dismiss: "At the pleadings stage, we do not require a plaintiff to allege enough detail to state a prima facie case of discrimination—only sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 959 n.8 (9th Cir. 2020) (citation modified).  Roberson's allegations clear this hurdle.

2.  *Hostile Work Environment*

To prove a hostile work environment claim, the plaintiff must show: (1) that she is a member of a protected class, (2) that the harassment was unwelcome, (3) that it was because of the protected status, (4) that it affected the terms or conditions of employment, and (5) that it was imputable to the employer.  *Robel v. Roundup Corp.*, 59 P.3d 611, 616 (Wash. 2002).  "To prevail on a hostile-work-environment claim, the plaintiff must show that the workplace was so 'permeated with discriminatory intimidation, ridicule, and insult … that [it] was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Diemert v. City of Seattle*, 776 F. Supp. 3d 922, 938 (W.D. Wash. 2025) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

The Court previously found that Roberson's allegations of a hostile work environment were insufficient because she did not describe incidents of harassment with sufficient detail, nor did she allege that the incidents she experienced affected the terms or conditions of her employment.  Dkt. No. 42 at 8.  The TAC eliminates some of the previous allegations of harassment, alleging only that Hopkins and King-Lowe stopped communicating with Roberson, until Hopkins yelled at Roberson in front of her colleagues on January 22, 2025, accusing her of

insubordination. *See* Dkt. No. 43 ¶¶ 3.38, 3.39–.41, 3.44, 3.46, 3.51, 3.52. Roberson's opposition does not focus on these allegations, but restates her arguments related to the denial of the experience credit, arguing that SEIU's discriminatory application of the experience credit led her to be denied a wage adjustment. Dkt. No. 51 at 22–23. But those allegations do not pertain to "harassment" such as intimidation, ridicule, or insult, and were addressed with respect to the disparate treatment claim. The TAC does not describe harassment that is sufficiently severe or pervasive as to constitute an abusive work environment. *See, e.g., Warren v. Regus Mgmt. Grp., LLC*, C24-1320 TSZ, 2025 WL 871670, at * 4 (W.D. Wash. Mar. 20, 2025) (explaining that even allegations of rude, demeaning, and hostile treatment are not sufficient unless the conduct alters the conditions of employment).

Accordingly, the Court finds that the TAC does not cure the deficiencies in the hostile work environment claim previously identified. Because Roberson has amended this claim multiple times already, without avail, the Court will dismiss this claim without leave to amend.

**D.      The Complaint Adequately States Claims for Retaliation and Unlawful Discharge.**

"The WLAD also prohibits employers from retaliating against persons who oppose discriminatory practices prohibited by the act." *Bittner v. Symetra Nat'l Life Ins. Co.*, 558 P.3d 177, 187 (Wash. Ct. App. 2024). A WLAD retaliation claim has three elements: "(1) the employee took a statutorily protected action, (2) the employee suffered an adverse employment action, and (3) a causal link between the employee's protected activity and the adverse employment action." *Cornwell v. Microsoft Corp.*, 430 P.3d 229, 234 (Wash. 2018).

The TAC alleges that Roberson took several statutorily protected actions: she filed a grievance about her wage complaint in March 2023, she complained of discriminatory wage disparities in fall 2023, she filed a lawsuit in December 2024, and she filed a grievance about Hopkins's Lobby Day treatment in January 2025. Dkt. No. 43 ¶¶ 3.26, 3.35, 3.55, 6.4. Most of

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 9

the retaliatory conduct alleged in the TAC either does not rise to the level of an adverse employment action (such as silent treatment or yelling), although Roberson's January 2025 termination is clearly an adverse employment action.[2]   Dkt. No. 43 ¶¶ 3.48, 3.50–.55, 3.57. Roberson's termination is also sufficiently close temporally to the filing of her lawsuit and the Lobby Day grievance to suggest a plausible retaliatory motivation.  *See Estevez v. Faculty Club of Univ. of Wash.*, 120 P.3d 579, 590 (Wash. Ct. App. 2005) (explaining that "proximity in time between the discharge and the protected activity … suggest[s] retaliatory motivation").  These allegations are sufficient, together with other allegations about Roberson's recognition as a workplace leader (Dkt. No. 43 ¶ 3.29), to raise a plausible inference that her termination was motivated by retaliation for her filing a lawsuit and/or a January 2025 grievance.  *See, e.g.*, *Warren*, 2025 WL 871670, at *7.

Likewise, these allegations also support Roberson's claim for unlawful discharge in violation of public policy.  There are four elements to this intentional tort: (1) the existence of a clear public policy; (2) discouraging the conduct in which plaintiff engaged would jeopardize the public policy; (3) the public-policy-linked conduct caused the dismissal; and (4) the defendant must not be able to offer an overriding justification for the dismissal."  *Worland v. Kitsap County*, 546 P.3d 446, 451 (Wash. Ct. App. 2024) (citation and quotation omitted).  This tort may arise "where employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing."  *Billings v. Town of Steilacoom*, 408 P.3d 1123, 1138 (Wash. Ct. App. 2017) (quoting *Roe v. TeleTech Customer Care Mgmt. (Colo.) LLC*, 257 P.3d 586, 595 (2011)).

---

[2] Although the TAC identifies Roberson's wage dispute as an adverse employment action (Dkt. No. 43 ¶ 6.5), it predated the protected activity identified and thus could not have been retaliatory.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 10

For the same reasons that the Court finds that the TAC adequately states a retaliation claim, it also adequately states a claim for termination in violation of public policy. Thus, the Court will deny Defendants' motion to dismiss these claims.

**E.      The Complaint Adequately States a Claim for Violation of Washington's Silenced No More Act.**

Roberson claims that the proposed settlement agreement that SEIU offered her violates Washington's Silenced No More Act, WASH. REV. CODE § 49.44.211(1) ("SNMA"). Dkt. No. 43 ¶¶ 8.1–8.7. The SNMA states that

> [a] provision in an agreement by an employer and an employee not to disclose or discuss conduct, or the existence of a settlement involving conduct, that the employee reasonably believed under Washington state, federal, or common law to be illegal discrimination, illegal harassment, illegal retaliation, a wage and hour violation, or sexual assault, or that is recognized as against a clear mandate of public policy, is void and unenforceable.

WASH. REV. CODE § 49.44.211(1). The SNMA states that it is a violation of the Act "for an employer to request or require than an employee enter into any agreement provision that is prohibited by this section." *Id*. § 49.44.211(4).

Here, Rukeyser offered Roberson a settlement agreement that prohibits her disclosing

> information that is not otherwise generally known to the public relating to or pertaining to 1199NW's operations, projects, members, suppliers, trade secrets, strategies, including but not limited to the following: financial information; techniques, technology, practices, methods of conducting business, information technology systems, published and unpublished know-how, research projects, products, legal affair[s], and future plans.

Dkt. No. 23-3 at 61. The proposed settlement agreement contains a section whereby Roberson would agree to waive her right to recover "monetary damages in any charge, complaint or lawsuit filed by [Roberson] or by anyone else on [Roberson's] behalf." *Id*. The proposed settlement agreement clarifies, however, that

> Nothing in this Agreement shall be construed to prohibit Employee from pursuing or participating in any investigation or proceeding conducted by the EEOC or

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 11

another federal, state or local agency with jurisdiction over workplace or employment issues. Further, nothing in this Agreement prohibits, prevents, or interferes with Employee's right to communicate, and/or initiate communications, with the EEOC and other federal, state or local agencies with jurisdiction over workplace or employment issues.

*Id*.

The Court previously found that SEIU's proposed settlement agreement does not violate SNMA because it included an explicit carve-out for reporting workplace discrimination to the EEOC or another federal, state, or local agency with jurisdiction over workplace or employment issues.  Dkt. No. 42 at 12–13.

Roberson amended her complaint to add legal argument, essentially seeking reconsideration of the Court's prior order.  *See* Dkt. No. 43 ¶¶ 8.3, 8.4.  Roberson argues that the carve-out is not sufficiently broad to satisfy the SNMA because it only permits her to disclose Defendants' discriminatory conduct to an agency, but does not explicitly permit her to disclose Defendants' discriminatory conduct in the context of a lawsuit such as this one.  *Id*.  Thus, according to Roberson, the settlement offer runs afoul of the SNMA.  Dkt. No. 51 at 27. Defendants' briefing does not address Roberson's argument regarding the extent of the carve-out. Dkt. Nos. 45, 52.

The Court finds that when the proposed settlement agreement is read in the light most favorable to Roberson, the carve-out is not broad enough to avoid the application of the SNMA. Its non-disclosure provision could be read to prohibit Roberson from disclosing the facts alleged in this lawsuit, and thus the Court finds that she has adequately stated a claim for violation of the SNMA.  The Court will deny Defendants' motion to dismiss this claim.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 12

### III.   CONCLUSION

For these reasons, the Court GRANTS Defendants' motion as to the hostile work environment claim, but DENIES the motion in all other respects.  Dkt. No. 45.  The courtroom deputy is directed to issue an order setting early case deadlines.

Moreover, in light of the related case pending in this Court (*Roberson v. SEIU Healthcare 1199NW*, No. 26-cv-05143-KKE (W.D. Wash.)), the parties are directed to meet and confer and file a joint status report as to their respective positions on consolidation of these two actions, no later than March 27, 2026.

Dated this 11th day of March, 2026.

Kymberly K. Evanson
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS - 13